**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

```
U.S. EQUAL EMPLOYMENT           )    3:07-CV-444-ECR-VPC
OPPORTUNITY COMMISSION,         )
                                )
     Plaintiff,                 )
                                )
vs.                             )    Order
                                )
CHAMPION CHEVROLET,             )
                                )
     Defendant.                 )
                                )
_____)
                                )
JACK ADLER,                     )
                                )
     Plaintiff-In-Intervention, )
                                )
vs.                             )
                                )
CHAMPION CHEVROLET,             )
JACK STANKO, an individual,     )
QUINTIN O'GRADY, an individual, )
DOES 1-10, DOE ENTITIES A-Z,    )
                                )
     Defendants-In-Intervention.)
                                )
_____)
```

This case arises from employment discrimination claims made by Plaintiff-Intervenor Jack Adler ("Adler") against his former employer, Defendant/Defendant-In-Intervention Champion Chevrolet ("Champion"). The Equal Employment Opportunity Commission ("EEOC") filed suit (#1) against Champion on September 27, 2007. Adler intervened, filing his Complaint (#15) on January 17, 2007.

1    Before the Court is Champion's "Motion to Dismiss Plaintiff-In-
2 Intervention's Claim for Punitive Damages" ("Motion to Dismiss" or
3 "MTD") (#63), Champion's Request for Oral Argument (#79) on its
4 Motion to Dismiss (#63), and the EEOC's "Motion for Partial Summary
5 Adjudication on the Issue of Conditions Precedent" ("P.'s MSJ")
6 (#68).  For the reasons stated below, Champion's Motion to Dismiss
7 (#63) and Request for Oral Argument (#79) will be denied.  The
8 EEOC's Motion for Partial Summary Judgment (#68) will be granted.

## I. Background

11    Champion employed Adler as a New Truck Sales Manager and as a
12 "desk manager" from February 15, 2001, to January 27, 2006.  (Adler
13 Compl. ¶¶ 8, 16 (#15); D.'s MTD at 2 (#63).)  Adler alleges that in
14 2002 Defendant Quintin O'Grady ("O'Grady"), a team manager, began
15 making anti-Semitic remarks to Adler both in and out of Champion's
16 owner Defendant Jack Stanko's ("Stanko") presence.  (Adler
17 Compl. ¶ 9 (#15).)  Adler contends he complained of O'Grady's
18 comments to Stanko on multiple occasions to no avail.  (Id. ¶ 10.)
19 Adler also alleges he was denied time off of work to worship on
20 Jewish holidays and that his requests to do so were followed by more
21 offensive anti-Semitic slurs.  (Id. ¶ 11.)  When Adler threatened to
22 sue for harassment, Stanko allegedly promised to stop the offensive
23 behavior, but instead terminated Adler's employment two months
24 later.  (Id. ¶ 13-16.)  Finally, Adler alleges Stanko retaliated
25 against him by contacting Adler's subsequent employer, another
26 automobile dealership, causing Adler's employment there to be
27 terminated as well.  (Id. ¶ 18.)
28
                                    2

On June 2, 2006, Adler filed a Charge of Discrimination with the EEOC. (P.'s Opp., Ex. A (#72).) The EEOC notified Champion of the Charge on June 12, 2006. (P.'s MSJ, Ex. 2 (#68).) Following an investigation, the EEOC found merit in Adler's claims and sent Champion a letter of determination stating it had found reasonable cause to believe Champion had subjected Adler to a hostile work environment and retaliated against him for complaining about it. (P.'s MSJ, Exs. 3, 4 (#68).) Champion failed to respond to the EEOC's March 29, 2007 inquiry as to whether it was interested in conciliation. (P.'s MSJ, Decl. of Scott Doughtie ¶ 6 (#68-3).) Despite the lack of response, the EEOC initiated the conciliation process by sending Champion a letter proposing to settle the case on April 11, 2007. (P.'s MSJ, Ex. 5 (#68).) The letter proposed a settlement amount of $1,259,166.67 — the statutory maximum representing full back pay, front pay, compensatory and punitive damages — and injunctive relief including Adler's reinstatement to his former position and religious harassment and retaliation training for all managerial staff Champion employed. (Id.)

On April 25, 2007, the EEOC reiterated its proposal to Champion's insurance carrier and extended its deadline to respond by a week. (P.'s MSJ, Ex. 6 (#68).) The EEOC and Champion then exchanged several phone calls regarding conciliation matters. (P.'s MSJ, Decl. of Scott Doughtie ¶ 9 (#68-3).) Though the extended deadline expired on May 2, 2007, the EEOC took no action until Champion and its insurance carrier indicated on May 21, 2007, that they would not be accepting the EEOC's proposal or making a counteroffer. (P.'s MSJ at 4 (#68).) At that point, the EEOC

determined further efforts to conciliate would be futile and advised Champion of that determination. (P.'s MSJ, Ex. 7 (#68).) The EEOC filed its Complaint (#1) asserting a hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII") five months later, on September 27, 2007.

Adler's Motion to Intervene (#4), filed on November 8, 2007, was granted, and his Complaint (#15) was filed on January 17, 2008. Adler's Complaint (#15) asserts six causes of action: two claims under Title VII for religious discrimination and retaliation, a race discrimination claim under 42 U.S.C. § 1981, and state law claims for racial and religious discrimination, wrongful termination and intentional infliction of emotional distress.

On March 15, 2009, the Court issued an order (#61) accepting the stipulation of the parties to dismiss with prejudice all of Adler's claims except for the two Title VII claims against Champion. The EEOC continues to assert its hostile work environment claim.

**II. Champion's Motion to Dismiss (#63)**

Champion seeks dismissal of Adler's claims for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). Champion argues that Adler has not adequately pleaded substantive allegations to support punitive damages on either of his surviving Title VII causes of action. For the reasons stated below, we conclude Adler's complaint satisfies the requirements of Federal Rule of Civil Procedure 8(a), stating a plausible claim for punitive damages under Title VII.

4

1     A. Standard

2     A motion to dismiss under Federal Rule of Civil Procedure
3 12(b)(6) will only be granted if the complaint fails to "state a
4 claim to relief that is plausible on its face." Bell Atl. Corp. v.
5 Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129
6 S. Ct. 1937, 1953 (2009) (clarifying that Twombly applies to
7 pleadings in "all civil actions").  On a motion to dismiss, "we
8 presum[e] that general allegations embrace those specific facts that
9 are necessary to support the claim." Lujan v. Defenders of
10 Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife
11 Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original); see also
12 Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that "[s]pecific
13 facts are not necessary; the statement need only give the defendant
14 fair notice of what the . . . claim is and the grounds upon which it
15 rests.") (internal quotation marks omitted).  Moreover, "[a]ll
16 allegations of material fact in the complaint are taken as true and
17 construed in the light most favorable to the non-moving party." In
18 re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996)
19 (citation omitted).

20     Although courts generally assume the facts alleged are true,
21 courts do not "assume the truth of legal conclusions merely because
22 they are cast in the form of factual allegations." W. Mining
23 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
24 "[c]onclusory allegations and unwarranted inferences are
25 insufficient to defeat a motion to dismiss." In re Stac Elecs., 89
26 F.3d at 1403 (citation omitted).

27

28

    Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. FED. R. CIV. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

    If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. Id. at 909; see FED. R. EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of

6

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### B. Analysis

Punitive damages are available in claims brought under Title VII. 42 U.S.C. § 1981a(b)(1). They are limited, however, to cases in which an employer has engaged in intentional discrimination and has done so with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 538-39 (1999); see also Swinton v. Potomac Corp., 270 F.3d 794, 810 (9th Cir. 2001) (employer may be vicariously liable for discriminatory acts of its managerial employees if it fails to adequately remedy the discriminatory acts). The terms "malice" and "reckless indifference" pertain not to the employer's awareness it is engaging in discrimination, but to its knowledge that it may be acting in violation of federal law. Kolstad, 527 U.S. at 535-36 (citing Smith v. Wade, 461 U.S. 30, 37 n. 6 (1983)). Neither the phrase "malice" nor "reckless indifference" appear in Adler's complaint (#15). Champion argues on this basis that Adler has not adequately pleaded a claim for punitive damages.

Kolstad, however, does not stand for the proposition that a plaintiff must recite the magic words "malice" or "reckless indifference" in the complaint. Rather, Kolstad clarified that punitive damages are available in claims for intentional discrimination where an employer has acted with the requisite intent, and held that such intent may be inferred from "egregious or outrageous acts." Kolstad, 527 U.S. at 538-39.

7

Federal Rule of Civil Procedure 8(a) controls what must be pleaded to state a claim for punitive damages. Under Rule 8(a), a complaint must contain (1) a statement of jurisdiction, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." Here, Adler's complaint contains a statement of jurisdiction. (Adler Compl. at 1-2 (#15).) It further contains allegations which, viewed in the light most favorable to Adler, could constitute "egregious or outrageous acts" by the Defendants. Kolstad, 527 U.S. at 538-39. As noted above, Adler's complaint (#15) alleges that he suffered numerous occasions of discriminatory anti-Semitic remarks during the course of his employment. Stanko was allegedly made aware of or was present while the remarks were made, but failed to act to stop the slurs. Adler avers that he was denied time off of work to practice his Jewish faith and was further ridiculed for his requests to do so. In addition, Alder alleges he was terminated from his subsequent employment at a different dealership because of a retaliatory phone call by Stanko. Finally, Adler's complaint contains a demand for the relief sought, punitive damages. (Adler Compl. at 6 (#15).) Under Rule 8(a) and Kolstad, that is sufficient.

Accordingly, we find Adler's complaint (#15) sufficiently alleges egregious conduct from which the requisite intent for punitive damages may be inferred. The complaint (#15) adequately

8

put Champion on notice that Adler was seeking punitive damages. Defendant's Motion to Dismiss (#63), therefore, will be denied.[1]

### III. The EEOC's Motion for Partial Summary Judgment (#68)

The EEOC seeks partial summary judgment on the issue of whether it has satisfied the four conditions precedent for it to be permitted to file suit against Champion. For the reasons stated below, we conclude there exist no genuine issues of material fact with respect to the four conditions precedent and the EEOC is entitled to judgment as a matter of law on this issue.

A. Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue,

---

[1] We note that in Champion's reply (#74) brief in support of its Motion to Dismiss, it raises for the first time the argument that punitive damages are precluded under 42 U.S.C. § 2000-e(5)(g)(2)(B). Issues raised for the first time in a reply brief will not ordinarily be considered by the court. United States v. Boyce, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001). We see no reason to depart from this practice here.

however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form - namely, depositions, admissions, interrogatory answers, and affidavits - only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

### B. Analysis

There are four conditions precedent the EEOC must meet prior to bringing suit. The EEOC must (1) receive a timely charge of unlawful employment practice and provide notice to the employer thereof; (2) conduct an investigation; (3) determine that reasonable cause exists to believe that discrimination has occurred; and (4) attempt to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. EEOC v. Pierce Packing Co., 669 F.2d 605, 607 (9th Cir. 1982). Champion concedes the EEOC has met conditions precedent (1) through (3) but contends that the EEOC has failed to meet condition precedent (4). Specifically, Champion argues the EEOC failed to engage in a good faith effort to eliminate the alleged unlawful employment practice by setting an unexplained or arbitrary payment amount in its conciliation proposal, giving an unreasonably short period of time to respond, refusing to disclose the identity of witnesses, and offering no explanation or basis for its determination.

11

Under the enforcement provisions of Title VII, if the EEOC determines after investigation that there is reasonable cause to believe a charge is true, the Commission must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. §2000e-5(b). To achieve this end, the EEOC invites the employer to enter into negotiations to settle the matter prior to litigation. Though this process is often referred to as a "conciliation attempt," this shorthand is somewhat misleading. During this stage, the EEOC does not act as a neutral mediator between the Charging Party (the complaining employee) and the Respondent (the employer), but rather pursues its own agenda: to "eliminate the alleged unlawful employment practice." Id.; see EEOC v. Hometown Buffet, Inc., 481 F. Supp. 2d 1110, 1114-15 (S.D. Cal. 2007) (finding EEOC fulfilled its statutory obligation even though the agency's "rigid and preemptive attitude" "did not serve as an effective conciliation technique"). "If within thirty days after a charge is filed the Commission has been unable to secure from the respondent a conciliation agreement <u>acceptable to the Commission</u>, the Commission may bring a civil action . . . ." 42 U.S.C. §2000e-5(f)(1) (emphasis added).

Our review of the EEOC's conciliation attempt is limited. Federal courts generally accord deference to an agency's administrative decisions, rule-making, and operating procedures, as well as to their interpretations of their governing statute. See Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc., 470 U.S. 116, 125 (1985) (view of an agency charged with administering a "complex

12

statute" is entitled to considerable deference and the court is precluded from substituting its judgment for that of the agency if the agency action was sufficiently rational). Thus, a district court's dissatisfaction with an EEOC conciliation attempt is not enough to justify a finding that the attempt was inadequate. Instead, the Court must accord deference to the "substantial discretion to be vested in the EEOC." Hometown Buffet, 481 F. Supp. 2d at 1113. If we were to find the EEOC failed to adequately conciliate the claims, the remedy would be to stay the action in order to allow the EEOC an opportunity to comply with its statutory conciliation duties. Id. (citing EEOC v. Zia Co., 582 F.2d 527, 533 (10th Cir. 1978)).

The record demonstrates that the EEOC informed Champion of the claims being made against it in some detail in the March 21, 2007 letter of determination.[2] (P.'s MSJ, Ex. 4 (#68).) The EEOC also first alerted Champion to the possibility of conciliation in that same letter. (Id. (inviting "the parties to join with [the EEOC] in a collective effort toward a just resolution of the matter").)

---

[2]The letter of determination stated:

> The evidence indicated that [Adler] was subjected to frequent derogatory Jewish comments by a Sales Manager, creating a hostile working environment which interfered with [Adler's] work performance on an increasing basis. The evidence indicates that [Adler] complained of the harassment numerous times to the Owner, who failed to stop it. The evidence also indicates that the Owner discharged [Adler] as a result of his religious harassment complaints.
> Based upon the evidence, [the EECO has] determined that there is reasonable cause to believe that Respondent harassed [Adler] based on his religion and retaliated against [Adler] for engaging in protected activity in violation of the statute.

(P.'s MSJ, Ex. 4 (#68).)

Then, on March 29, 2007, a representative from the EEOC left a voicemail for Champion inquiring as to whether it was interested in conciliation. After waiting twelve days without response, the EEOC sent a written conciliation proposal to Champion on April 11, 2007.[3] On April 23, 2007, the deadline the EEOC had set for a response to its proposal, Champion requested that its insurance carrier be included in the conciliation negotiations. The EEOC acquiesced on April 25, 2007, extending its deadline until May 2, 2007. Over the next weeks, several phone calls were exchanged between the EEOC and Champion. Though the deadline passed, the EEOC took no action. On May 21, 2007, nearly six weeks after the conciliation proposal was sent by the EEOC and two months after the EEOC attempted to begin discussions with Champion, Champion informed the agency it would not accept the EEOC's proposal and that it would not be making a counteroffer. The EEOC terminated conciliation efforts on May 30, 2007.

Once Champion made clear it had rejected the EEOC's proposal and would not be making a counteroffer, the EEOC had no obligation to continue conciliation efforts. See EEOC v. Bruno's Restaurant, 13 F.3d 285, 289 (9th Cir. 1993) (finding that where a defendant

---

[3] The conciliation proposal stated:

   The purpose of this letter is to inform you in writing that the Commission and the Charging Party demand the sum of $1,259,166.67 plus reinstatement to his position of New Truck Sales Manager. This amount represents full back pay and benefits, front pay, compensatory damages and punitive damages. The Commission will also require certain other remedies, including the training of all managers at Respondent's dealership regarding religious harassment and retaliation.

(P.'s MSJ, Ex. 5 (#68).)

14

"was unwilling to engage in any discussion regarding [a] charge" the EEOC could have reasonably believed its efforts to conciliate were sufficient); accord EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1101-02 (6th Cir. 1984) (finding that once an employer rejects the EEOC's conciliation attempts, the EEOC is free to file suit).  Here, the EEOC demonstrated its flexibility by extending and choosing not to enforce the deadlines it had set for Champion to respond, instead terminating the conciliation process only once Champion and its insurer had considered and rejected the EEOC's proposal.  See EEOC v. Cal. Teachers' Ass'n, 534 F. Supp. 209, 212 (N.D. Cal. 1982) (stating that the proper inquiry is whether the EEOC provided an opportunity for the party charged with a violation to confront all issues during the conciliation).

    Even viewing the facts in the light most favorable to Champion, Champion received adequate explanation for the EEOC's determination of reasonable cause and settlement proposal.  The letter of determination listed the evidence upon which the EEOC based its finding of reasonable cause. The EEOC's failure to disclose the identities of potential witnesses should not have affected Champion's ability to consider the demand.  Cf. EEOC v. First Midwest Bank, N.A., 14 F. Supp. 2d 1028, 1032 (N.D. Ill. 1998) (finding conciliation attempt inadequate where defendant was forced to operate in "evidentiary vacuum"); see also EEOC v. Equicredit Corp., No. 02-CV-844, 2002 WL 31371968, at *3-4 (E.D. Pa. Oct. 8, 2002) (EEOC's failure to disclose identity of corroborating witnesses does not prevent employer from assessing EEOC's position during conciliation stage and does not render conciliation efforts

inadequate).  Champion was aware the monetary settlement proposed by the EEOC, $1,259,166.67, was not an arbitrary amount, but "represent[ed] full back pay and benefits, front pay, compensatory damages and punitive damages."  (P.'s MSJ, Ex. 5 (#68)); see also (D.'s Opp., Ex. 1 (Marshall Smith Aff.) ¶ 3 (#73-2).)  Champion received seven weeks to contemplate and respond to the conciliation proposal — a reasonable period of time in the circumstances of this case.  Cf. Cal. Teachers' Ass'n, 534 F. Supp. at 212-13 (finding that a one-day conciliation negotiation where the EEOC rejected a counteroffer and determined conciliation negotiations had failed was reasonable).  Indeed, there is no indication the EEOC would have denied Champion more time if it had been requested; the EEOC only concluded conciliation efforts after Champion rejected the demand, three weeks after the "deadline."  Furthermore, it is Champion that cut off negotiations by informing the EEOC no counteroffer would be forthcoming.  Cf. EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256 (11th Cir. 2003) (finding conciliation effort by EEOC inadequate where EEOC gave just twelve days to respond to demand which it had investigated for thirty-two months and failed to respond to defense counsel's repeated attempts to confer).

    In short, the record demonstrates that the EEOC's conciliation attempt was adequate.  Champion has failed to set forth specific facts showing that there exists a genuine issue of material fact regarding the EEOC's obligation to attempt in good faith to resolve

16

the matter through informal methods.  Accordingly, the EEOC's motion for partial summary judgment (#68) will be granted.[4]

### IV. Conclusion

Adler's Complaint (#15) pleads sufficient substantive allegations to support a claim for punitive damages on his Title VII claims.  The EEOC has demonstrated that no genuine issues of material fact remain regarding the four conditions precedent for it to bring suit against Champion.

**IT IS, THEREFORE, HEREBY ORDERED THAT** Defendant Champion Chevrolet's Motion to Dismiss Plaintiff-In-Intervention's Claim for Punitive Damages (#63) and Request for Oral Argument (#79) are **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiff EEOC's Motion for Partial Summary Adjudication on the Issue of Conditions Precedent (#68) is **GRANTED**.

DATED: August 26, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[4] It is appropriate to emphasize that this ruling does not mean that Adler is entitled to relief, but only that the EEOC is entitled to bring suit.

17